IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

LOUISE DIXON,

    Plaintiff,

vs.                              CASE NO. CV-02-J-607-S

SCI OF ALABAMA d/b/a FUNERAL
SERVICES OF ALABAMA,

    Defendant.

## MEMORANDUM OPINION

Currently pending before the court is the defendant's motion for summary judgment (doc. 17), and brief in support thereof ("brief in support"), to which the plaintiff responded and submitted evidence in opposition (doc. 21). The defendant thereafter submitted a reply.

### I. Procedural History

Plaintiff commenced this action by filing a complaint (doc. 1) alleging that the defendant discriminated against her on the basis of her sex and age, as evidenced by her non-selection for a promotion to the position of sales manager at Elmwood Cemetery in July, 2001. Complaint at ¶¶ 7, 8, 14, 15. The plaintiff alleges that the selection of a younger male instead of her for the position in question violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e *et seq*. Upon consideration of the pleadings and evidentiary submissions, the court concludes that the motion for summary judgment is due to be granted.



## II. Factual Background

In the light most favorable to the plaintiff, the facts of this case are as follows:

The plaintiff is 71 years old and has been employed by defendant in various locations since 1982. Complaint at ¶ 3. She has been in her current position, sales manager of Highland Memorial Gardens ("Highland"), since 1992. Plaintiff depo. at 51, 53, 54. Highland does not have a funeral home component. *Id.* at 53. The plaintiff has supervised from three to five people the entire time she has been at Highland. *Id.* The position for Sales Manager at Elmwood Cemetery ("Elmwood") was posted in July, 2001. Defendant exhibit 1. The plaintiff applied for this position and was interviewed for it. Defendant exhibits 2 and 3. Brian Murphy, a younger male, was hired for the position.[1] Plaintiff depo. at 55-56. The decision to hire Murphy was made by Rick Davis with input from Mike Shipley.[2] Plaintiff depo. at 55-56, 74-75, Shipley depo. at 75-77, 81-82; Davis depo. at 24. The plaintiff believes this to be discrimination against her based on her age and gender. Plaintiff depo. at 56, 93.

---

[1] The plaintiff assumed Brian Murphy was in his late thirties. Plaintiff depo. at 92. Brian Murphy was born in 1949. Plaintiff depo. at 92; plaintiff's exhibit 8. Brian Murphy has since left defendant's employ. Plaintiff depo. at 106. He did not meet quota at Elmwood. Shipley depo. at 94-97.

[2] Rick Davis was the area sales director at that time. Shipley depo. at 34-35, Davis depo. at 8. Shipley was Vice President of Cemeteries. Shipley depo. at 10. He has since stepped down to be sales manager at a cemetery, but makes more money in this position. *Id.* at 10-11, 24. Shipley was replaced by Daniel Murphy, who became Senior Vice President of Sales for the Southern Region, in August, 2001. D. Murphy depo., at 9, 11.

2

The plaintiff further alleges she was offended when Shipley sent her a "vibrator" for Christmas, 2000.³ Plaintiff depo. at 57-59. Shipley testified he sent "temple massagers" to all his sales managers. Shipley depo. at 97.

The plaintiff further alleges that Shipley once told her that she needed to "get a big calendar and put it on her desk and make notes, because when you get older, you forget." Plaintiff depo. at 60. This was in the fall of 2000.⁴ She never told Shipley this offended her. *Id*. at 61. She reported it to Diana Croft, who was the Area Sales Director at that time,⁵ but not to any one at the defendant's corporate office. *Id*. Shipley stated he often says about himself, that he's got to write things down to remember what he has to do. Shipley depo. at 102-103. He does not deny making the comment, but did not consider it to be directed at older people. *Id*. at 103-104. The plaintiff can remember no other such comments by Shipley, although she is "sure there was other things. But you know, it just doesn't come to me now." Plaintiff depo. at 63. However, before Croft left defendant's employ, she told the

---

³The plaintiff has not alleged a claim for sexual harassment, although she alleges this was such harassment. Plaintiff depo. at 59. She made no mention of this incident in her EEOC charge, which is undated. Exhibit A to plaintiff's supplement to complaint (doc. 5). However, the affidavit plaintiff submitted to the EEOC is dated August 20, 2001. Exhibit B to plaintiff's supplement to complaint. The court deduces from these documents and the evidentiary submissions that plaintiff's EEOC charge was filed no earlier than July 10, 2001, as that was the date she was interviewed for the position in question. Defendant's exhibit 3. The plaintiff testified she went on vacation after her interview and found out she did not get the Elmwood position after she came back from vacation. Plaintiff depo. at 127. Thus, the court finds the plaintiff would be time barred from stating a claim for sexual harassment over receipt of this gift.

⁴Although plaintiff stated at deposition this was in 2000 or 2001, in her August, 2001 affidavit to the EEOC, the plaintiff alleged this incident occurred in November, 2000. Exhibit B to plaintiff's supplementation to complaint.

⁵Croft was replaced by Davis. Davis depo. at 8.

plaintiff that Shipley told her that the plaintiff should retire because of her age. Plaintiff depo. at 79-80. On one other occasion, she was presented as either the oldest person employed by defendant, or the person who was employed by the defendant the longest. Plaintiff depo. at 122-123. The plaintiff does not remember when this was. *Id.* at 123. She has never heard any discriminatory comments based on gender. *Id.*

The plaintiff also asserts she has not gotten a bonus she was due, but does not know if this was discriminatory. *Id.* at 65-68. However, the plaintiff then determined during her deposition that it probably was because she is getting older. *Id.* at 68-69. Neither Tony Arboritanza nor Rick Davis made any comments she found offensive.[6]

The plaintiff has sold pre-arranged funerals, but when asked if she had funeral home experience, she replied:

> Well, I have had a lot of funeral home experience, not selling. But as minister of children's education, I was in and out of funeral homes with families. And I feel like anybody that works at a funeral home is a people person. And I feel like I am a people person. And in my work at the church, I was in and out of the funeral homes on a regular basis.

Plaintiff depo. at 76-77. However, she then admitted no funeral home was attached to Highland. *Id.* at 77. Elmwood does have a funeral home attached. *Id.* Davis testified that in addition to meeting sales quotas, the Elmwood position required the creation of marketing strategies, marketing programs and motivational programs. Davis depo. at 36-37. The sales manager at Elmwood is encouraged not to actively sell because of the amount of time

---

[6]Tony Arboritanza is the Area Sales Director for Highland, Bessemer and Tuscaloosa. Davis depo. at 12.

managing and assisting counselors that location requires due to its size. *Id.* at 44. The plaintiff's sales volume was irrelevant to the Elmwood position because that position did not include selling. *Id.* at 48-49. He knew she was a successful sales manager as far as sales were concerned. *Id.* at 50. While he did not consider actual sales numbers, he did consider sales abilities. *Id.* at 63. Daniel Murphy stated that the main criteria used to evaluate a sales manager is sales performance.[7] D. Murphy depo. at 25. However, he also stated that each candidate's sales numbers would have been one factor in considering whom to hire. *Id.* at 48.

The plaintiff, Brian Murphy and Eric Nations (a black male) applied for the Elmwood position. Shipley depo. at 34; Davis depo. at 23-24; D. Murphy depo. at 29. Brian Murphy was the area sales director for Montgomery, which involved managing three locations. Shipley depo. at 35; Davis depo. at 61. Nations was the sales manager at Gardendale. Shipley depo. at 36. Shipley instructed Davis to set up interviews for everyone who applied. *Id.* Shipley attended all the interviews. *Id.* at 38. After the interviews, Shipley thought all three would be good candidates for the job. *Id.* at 73-74.

The plaintiff testified that she was more qualified than Brian Murphy for the Elmwood position because of "success where I have been." Plaintiff depo. at 94. She stated she always has been successful in every cemetery where she has worked. *Id.* Additionally, she believes she is more qualified because she has watched his success. *Id.* at 95. The plaintiff concluded "[h]e's been successful, but I feel like I have been more successful" based on

---

[7]Daniel Murphy's position was Senior Vice President of Sales for the southern region.

percentages.[8] *Id.* at 95-96. She also thinks she has worked longer as a sales manager. *Id.* at 97. The plaintiff states that the fact that Brian Murphy had funeral home experience and she did not would not make him more qualified for the position because "if you can sell one thing, you can sell another. It doesn't make any difference whether it's funeral home or cemetery or selling peanuts, selling is selling." *Id.* at 102. Thus, because she had more years of experience and better sales percentage, the plaintiff filed her charge of gender and age discrimination. *Id.* at 103. However, she has no experience selling anything but cemeteries and agrees that Brian Murphy was also qualified for the position. *Id.* at 109, 132. Shipley testified that the plaintiff did a good job and consistently met quota.[9] Shipley depo. at 31. However, he also stated that they were not just considering sales dollars performance, but looking for the individual that would best meet the needs of Elmwood. *Id.* at 83.

The plaintiff testified that the Highland facility was different from Elmwood because Elmwood has "a mausoleum and a great heritage over years and it brings in – the funeral home itself brings in a certain amount of business. And I felt like it would be just a great opportunity." Plaintiff depo. at 111. Elmwood is the only job with defendant the plaintiff has applied for that she did not receive. *Id.* at 113. She has turned down several jobs offered by defendant since then, including Greenwood, in Montgomery, which includes a cemetery and funeral home. *Id.* at 114. This position had been occupied by Brian Murphy, so it came

---

[8]Percentages of sales create the salesperson's "board volume," which is a measure of job success. *See* plaintiff depo. at 95-96. Board volume is calculated by sales minus endowment care. *Id.* at 120.

[9]At one time, Shipley was plaintiff's direct supervisor, before the area sales director ("ASD") position was added. Shipley depo. at 30.

6

available when he received the Elmwood position. *Id.* at 119. This offer was made to her after she did not get the Elmwood job, but the plaintiff rejected it because she believed she could make the same money by staying at Highland. *Id.* at 114-115. Greenwood is smaller than Elmwood, but larger than Highland. *Id.* at 120; plaintiff's exhibit 8.

Daniel Murphy testified that he did not think the plaintiff was qualified for the Elmwood position in spite of her impressive sales performance because Highland was a small facility. D. Murphy depo. at 76. He stated "[t]he small responsibility she had, as I remember it, a quota of less than seventy thousand dollars. We're talking about an operation five to six times that size and a combination operation managing, not only cemetery sales focused on family service, but inside sales, outside sales for the funeral home. It was really not an apples to apples comparison." *Id.*, at 76-77.[10]

The plaintiff testified that the defendant has a policy in place concerning discrimination. She understood she could either call a phone number to complain, or talk to her supervisor, but the plaintiff did not do so. Plaintiff depo. at 126. However, she did talk to Mike Riley about not getting the Elmwood job, and he told her he thought she could do the work. *Id.* at 128. He did not say she was better qualified than Brian Murphy. *Id.* at 128.

---

[10]Additionally, plaintiff's exhibit 3 at 9 shows that Brian Murphy's sales were higher than plaintiff's in both revenue and percentages. The court notes Eric Nation's percentage sales exceeded both the plaintiff's and Brian Murphy's. *Id.* at 9, 20. *See also* plaintiff's exhibit 8.

## III. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477 U.S. at 249.

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case .... A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir.2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir.1987).

### IV. Discussion

The ADEA makes it unlawful for an employer to fail or refuse to hire or otherwise discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment because of such individual's age. 29 U.S.C. § 623(a)(1); *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir.2000). Liability depends on whether the plaintiff's age actually motivated the employer's decision. Her age must have actually played a role in the employer's decisionmaking process and had a determinative influence

on the outcome. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141, 120 S.Ct. 2097, 2105, 147 L.Ed.2d 105 (2000) (citations omitted). To evaluate ADEA claims based on circumstantial evidence, this court must use the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Reeves*, 530 U.S. at 141, 120 S.Ct. at 2105.

Similarly, under Title VII of the Civil Rights Act of 1964, as amended, an employer may not discriminate against any employee with respect to her compensation, terms, conditions, or privileges of employment because of, among other things, her sex. 42 U.S.C. § 2000e-2(a)(1). As with the ADEA, when evidence of discrimination is circumstantial in nature, the court must apply the three prong test for focusing the court's examination of the evidence and allegations established in *McDonnell Douglas Corp. v. Green, supra*; *see also Texas Department of Community Affairs v. Burdine,* 450 U.S. 248; 252-253; 101 S.Ct. 1089, 1093-1094, 67 L.Ed.2d 207 (1981); *Busby v. City of Orlando*, 931 F.2d 764, 777 (11th Cir.1991).

Under this burden shifting standard, the plaintiff must establish a prima facie case of discrimination. *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. Establishment of a prima facie case creates a presumption that the employer unlawfully discriminated against the employee. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997). In *Turlington v. Atlanta Gas Light Company*, 135 F.3d 1428 (11th Cir.1998), the Court specifically addressed the standard to apply when a plaintiff attempts to use circumstantial evidence to establish unlawful

10

discrimination under the ADEA. The Court stated that a burden shifting scheme is employed, as follows: "The plaintiff must establish a *prima facie* case of discrimination. The employer then must respond with a legitimate, nondiscriminatory reason for its actions. In order to prevail, the plaintiff must establish that the employer's articulated legitimate reason was a pretext to mask unlawful discrimination." *Turlington*, 135 F.3d at 1432, citing *Walker v. NationsBank of Fla., N.A.*, 53 F.3d 1548, 1556 (11th Cir.1995).

To establish her prima facie case under the ADEA for age discrimination, plaintiff must show (1) she was a member of the protected group (age), (2) she was subjected to an adverse employment action, (3) she was qualified for the job and (4) she was replaced or otherwise lost a position to a younger individual. *Turlington*, 135 F.3d at 1432;[11] *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207-08 (11th Cir. 1997). *See also O'Conner v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996).

Likewise, under Title VII, the plaintiff must show (1) she is a member of a protected class (female); (2) she applied for and was qualified for a job for which the employer was seeking applicants; (3) she was rejected; and (4) after her rejection, the position remained open. *O'Connor,* 517 U.S. at 310-311, 116 S.Ct. at 1309, citing *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802, 93 S.Ct. at 1824. *See also Shoenfeld v. Babbitt*, 168 F.3d 1257, 1267 (11th Cir. 1999). Establishment of a prima facie case creates a presumption that the

---

[11]In *Turlington*, a 1998 case, the Eleventh Circuit stated the first prong of this standard required the plaintiff to show "that he was a member of the protected group of persons between the ages of forty and seventy." *Turlington*, 135 F.3d 1432. This court notes the upper end of the age limit was removed by Congress in the 1986 amendments to the ADEA. *See* Pub.L. 99-592, § 2(c)(2).

employer unlawfully discriminated against the employee. *Burdine*, 450 U.S. at 254, 101 S. Ct. at 1094; *Combs v. Plantation Patterns*, 106 F.3d at 1527.

Assuming the employee meets this burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment action. *Harris v. Shelby County Board of Education,* 99 F.3d 1078, 1083 (11th Cir.1996). "If the defendant's proffer of credible, nondiscriminatory reasons for its actions is sufficiently probative, then the plaintiff must come forward with specific evidence demonstrating that the reasons given by the defendant were a pretext for discrimination." *Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946, 950 (11th Cir.1991), *cert. denied*, 502 U.S. 1058, 112 S.Ct. 935, 117 L.Ed.2d 106 (1992).

Once a defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination drops from the case. *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094 and n. 10. The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825. The focus of the case after the defendant meets its burden of production is on the defendant's subjective intent and the motivation behind the defendant's adverse employment action directed at plaintiff. *Harris*, 99 F.3d at 1083.

This court finds, taking the evidence presented in the light most favorable to the plaintiff, the plaintiff does establish both a prima facie case of age discrimination and sex discrimination, based on the above stated analysis this court must apply. Thus, the burden

12

shifts to the defendants to present a legitimate, nondiscriminatory reason for the challenged action (the failure to promote plaintiff). *Combs*, 106 F.3d at 1528; citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. The defendants here put forth as reasons for their decision that Brian Murphy had funeral experience, which the plaintiff did not, and that he had greater management experience than the plaintiff. This is a legitimate business decision, which this court should not second-guess. *See Alexander v. Fulton Co.*, 207 F.3d 1303, 1340-41 (11th Cir.2000) (stating it is not the court's role to second-guess the wisdom of an employer's decisions as long as the decisions are not improperly motivated). Additionally, the defendant asserted that sales ability, while considered, was not the deciding factor.[12]

Both Brian Murphy and the plaintiff had impressive past performances, but Davis based his ultimate decision on Murphy's experience managing three locations as compared to plaintiff's one. Davis depo. at 61, 62, 67; D. Murphy depo. at 104. Furthermore, Murphy had combination funeral home and cemetery experience. Davis depo. at 61. According to Davis, selling at a cemetery without an attached funeral home and one with an attached funeral home are not the same. *Id.* at 75. While plaintiff had the knowledge to sell both funerals and cemeteries, she did not have as much experience with it as Brian Murphy,

---

[12]Daniel Murphy testified that "Sales is critically important, but if we're talking about making a major company decision based on the the (sic) future of a person on the sales team based on one look at one week at what the sales red alert said would be ridiculous." D. Murphy depo. at 49. He also stated that the fact that Brian Murphy did not meet quota was "one of the factors that were there. It was not a topic of discussion. It was not – I don't remember a conversation about that except as it evolved with the overall qualifications of Brian." *Id.* at 68.

because she had never managed a location with a funeral home. *Id*. at 76-77. Thus, while sales performance was considered, it was not necessarily a deciding factor. D. Murphy depo. at 48, 52, 77-78. Rather, the defendant was looking for someone with the experience and background to go into a business the size of Elmwood and "do what needed to be done." *Id.* at 104, 106-107. Additionally, Brian Murphy managed a sales staff about the size of the one at Elmwood in his previous position, while plaintiff did not. *Id*. at 104.

The defendant's burden at this point is merely one of production, it does not have to show that the reasons set forth actually motivated the employment decision. *Chapman,* 229 F.3d at 1024, quoting *Combs*, 106 F.3d at 1528. Because the defendant had legitimate, nondiscriminatory reasons for its actions, the presumption of discrimination is eliminated and the plaintiff has "the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs,* 106 F.3d at 1528; citing *Burdine,* 450 U.S. at 255 & n. 10, 101 S.Ct. at 1094-1095 & n. 10. The plaintiff must proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant's articulated reasons is pretextual, otherwise the defendant is entitled to summary judgment. *Combs*, 106 F.3d at 1530. *See also Harris,* 99 F.3d at 1083.

The only evidence presented by the plaintiff in response to the defendant's stated nondiscriminatory reasons for not selecting the plaintiff is her belief that it is based on her age or sex, and her belief she was better qualified. This is insufficient for the plaintiff to

meet her burden of showing pretext. *Lee v. GTE Florida*, 226 F.3d 1249, 1252, 1254 (11th Cir.2000). The court finds that the two comments concerning her age made, at a minimum, eight months before she interviewed for this position do not offer any support to plaintiff's belief she was not selected for promotion due to her age or sex.[13] This is especially true given that both comments were made by Shipley and the hiring decision was made by Rick Davis, according to the evidence before this court. *See e.g.*, depo. of D. Murphy at 103.

Additionally, the court finds no evidence presented by the plaintiff that her non-selection had anything to do with her gender, other than the fact that she is female. The defendant does not contradict the plaintiff's allegations that she is an excellent sales person and can sell anything. Rather, the defendant asserts it sought a person with management experience, combination funeral home/cemetery experience, and sales ability. The plaintiff's position that she was the better salesperson and hence should have received the position is not sufficient for the plaintiff to show pretext, as it amounts to an argument that she could have done the job better than Murphy.[14] Thus, while the plaintiff may have exceeded her quota when Brian Murphy did not, this does not rebut the defendant's legitimate, non-discriminatory reasons for promoting Brian Murphy over the plaintiff.

---

[13] The court notes that both of the comments in question were made more than 180 days prior to the plaintiff filing her charge of discrimination with the EEOC. The plaintiff is barred from suing based on these actions now. *See Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1434 n. 11 (11th Cir.1998).

[14] This is especially true given the plaintiff's reliance on Brian Murphy's failure to meet quotas after receiving the Elmwood position, given that this is information the defendant would not have had at the time it decided to give the position to Murphy.

The plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where the reason is one that might motivate a reasonable employer. *Lee*, 226 F.3d at 1253. This court finds that any reasonable jury could believe that the defendant's stated reasons were sufficient to promote Brian Murphy over the plaintiff.

This court can find no evidence in support of plaintiff's allegations of discrimination. The fact that plaintiff believed she would have been a better person for the position at Elmwood than the person selected does not make the defendant's selection of a different candidate discriminatory. As such, this court finds that summary judgment is due to be granted in favor of the defendants and against the plaintiff on all claims under Title VII and the ADEA, and the court shall so order.

### V. Conclusion

This court having considered all of the evidence, memoranda and briefs and the court finding that the defendant's motion for summary judgment (doc. 17) is due to be granted on all counts of the complaint;

It is therefore **ORDERED** by the court that said motion be and hereby is **GRANTED** on all counts of plaintiff's complaint and judgment shall be entered in favor of the defendants and against the plaintiff by separate order.

**DONE** and **ORDERED** this the 21st day of November, 2002.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE